IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MADONNA H.,[1]                                         No. 6:24-cv-00360-AA

                Plaintiff,                        OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

AIKEN, District Judge:

Plaintiff Antonia D. seeks judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying benefits. The decision of

the Commissioner is AFFIRMED and this case is DISMISSED.

---

[1]      In the interest of privacy, this Opinion uses only the first name and the initial
of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## BACKGROUND

On May 17, 2019, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability beginning on January 6, 2017. Tr. 244-251. The applications were denied initially and upon reconsideration and, at Plaintiff's request, a telephonic hearing was held before an Administrative Law Judge ("ALJ") on April 22, 2021. Tr. 28-67, 147-55, 156-64. On October 14, 2021, the ALJ issued a decision finding Plaintiff not disabled. Tr. 11-27. On January 5, 2024, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

"Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 6, 2017. Tr. 15.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, depression, anxiety, bipolar disorder, and PTSD. Tr. 17. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: she can occasionally climb ramps and stairs but can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, or crouch but can never crawl. She is limited to

occasional overhead reaching, bilaterally. She can tolerate no exposure to industrial vibration or workplace hazards such as unprotected heights and dangerous machinery. The claimant is capable of understanding, remembering, and carrying out short, simple, routine tasks with a DOT GED reasoning level of 2 or less. She should have no interactive contact with the public and only occasional contact with supervisors and coworkers. The claimant requires a static work environment with few changes in work routines or settings. Tr. 20.

At step four, the ALJ found Plaintiff unable to perform any past relevant work. Tr. 25. At step five, the ALJ found that Plaintiff was capable of performing work that exists in significant numbers in the economy, such as marker, assembler of electrical accessories, and basket filler. Tr. 26. As a result, the ALJ found Plaintiff not disabled. Tr. 27.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to identify her fibromyalgia and trigeminal neuralgia as severe, medically determinable impairments at step two of the sequential evaluation process, (2) discrediting her subjective symptom statements without clear and convincing reasons for doing so, and (3) improperly discounting medical opinion evidence. Pl.'s Br., ECF No. 14, at 3-13. For the reasons that follow, the Court finds the ALJ did not err, and affirms.

## I.    Step Two

At step two, the ALJ determines "whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden v.*

*Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). An impairment is severe "if it 'significantly limits' an individual's 'ability to do basic work activities.'" *Id.* (citing 20 C.F.R. § 404.1520(c)). The step-two severity analysis is a "threshold showing," *Yuckert*, 482 U.S. at 147, that serves to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account[.]" *Id.* at 153. In evaluating whether the claimant's impairments are severe, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

Step two is "a *de minimis* requirement that screens out only frivolous claims," *id.* at 843; thus, "properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Id.* at 844. The Ninth Circuit has emphasized that "[a]n ALJ may find an impairment or combination of impairments 'not severe' at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (simplified); *accord* SSR 85-28 (explaining that ALJs must apply step two using "great care" by proceeding to step three if a clear determination cannot be made). For an impairment to qualify as "severe" at step two it must satisfy the "duration requirement," that is, it "must have lasted or must be expected to last for a continuous period of at least 12 months" after the alleged onset date. *See* 20 C.F.R. § 404.1509, 404.1520(a)(4)(ii).

The ALJ found that Plaintiff had several severe physical and mental impairments at step two, including osteoarthritis, degenerative disc disease, depression, anxiety, bipolar disorder, and posttraumatic stress disorder. Tr. 17. Plaintiff argues the ALJ erred by omitting two further alleged impairments from that list: fibromyalgia (or "pain syndrome") and trigeminal neuralgia. Pl. Br., ECF No. 14 at 3-4.

Substantial evidence supports the ALJ's decision not to include Plaintiff's alleged fibromyalgia or trigeminal neuralgia among her severe impairments. Tr. 17. At step two, claimants have the burden to present evidence sufficient to establish a "severe" impairment, *i.e.*, one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). These include a claimant's ability to handle instructions, use judgment, respond appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b)(3-6). The record supports the ALJ's conclusion that Plaintiff's fibromyalgia and trigeminal neuralgia did not meet these criteria. As an initial matter, Plaintiff's fibromyalgia did not meet the 12-month durational requirement. Tr. 17. As the ALJ noted, the fibromyalgia diagnosis was "dropped from her treatment records once she stopped treating with the pain clinic" before the required 12-month period. Tr. 17. And Plaintiff's providers attributed her symptoms to chronic pain syndrome, not fibromyalgia. ECF No. 14 at 4 (citing Tr. 345, 359, 360). Concerning trigeminal neuralgia, the ALJ also reasonably concluded that Plaintiff failed to present evidence that this impairment would significantly limit her physical or

mental ability to work. Tr. 17. Plaintiff testified that she suffered trigeminal neuralgia episodes only every other month, and that she was able to treat these symptoms effectively with nerve injections and peppermint oil. Tr. 17, 51. The ALJ reasonably concluded this impairment was not severe either because Plaintiff did not bear her burden to show it caused any functional limitations. In short, the ALJ relied on substantial evidence in concluding that plaintiff does not have a significant limitation in any relevant work activity.

Even assuming that the ALJ erred in neglecting to list Plaintiff's fibromyalgia and trigeminal neuralgia at step two, any error was harmless. An ALJ's step two error is harmless when step two is decided in a claimant's favor and the ALJ considers Plaintiff's limitations at subsequent steps. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error the ALJ committed at step two was harmless because the step was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the RFC discussed it in step four). Here, the ALJ resolved step two in Plaintiff's favor, and extensively discussed Plaintiff's pain-related symptoms later in the five-part analysis. Tr. 17-24. Any failure to categorize Plaintiff's fibromyalgia or trigeminal neuralgia as severe at step two is therefore harmless. *Cf. Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054–55 (9th Cir. 2006) (discussing harmless error analysis in the Social Security context).

II.    **Symptom Testimony**

Plaintiff next contends the ALJ erred by discrediting her symptom testimony about the combined effect of her mental and physical impairments. Pl.'s Br., at 5-9. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the

ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At her September 2021 hearing, Plaintiff testified that she is unable to stand for longer than thirty minutes or walk more than two blocks. Tr. 51. She can sit for thirty minutes before needing to change positions. Tr. 51. She can lift no more than fifteen pounds reliably. *Id.* Her medications cause side effects of sleepiness and blurred vision. Tr. 53. At the time of hearing, she had not left her home in two months. Tr. 55. She has panic attacks two or three times a week. Tr. 49.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with objective medical evidence, improvement with treatment, and reported daily activities. Tr. 21-23.

The ALJ reasonably discounted Plaintiff's alleged limitations stemming from her mental health impairments as inconsistent with objective medical evidence in the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). Plaintiff testified at the hearing that she suffered panic attack and anxiety when around people, or in grocery stores. Tr. 43. She alleged these mental health symptoms made it difficult for her to do simple, everyday tasks. *See, e.g.,* Tr. 54-55. In contrast to these

allegations, however, the ALJ pointed to numerous objective medical records that showed Plaintiff's normal mental status examinations and her improvement with treatment. Tr. 22-23. For example, the ALJ cited treatment records where Plaintiff demonstrated she was alert and oriented to person, place, time, and situation. Tr. 23 (citing Tr. 711, 915, 931, 963, 1073, 1135). The ALJ noted that although Plaintiff presented at her psychiatric appointment in December 2019, March 2020, and August 2021 as sad and anxious, she was alert, fully oriented, cooperative, goal directed with organized and logical thought process, intact remote memory and language, and average fund of knowledge. Tr. 23 (citing Tr. 915, 964, 1073-74). Finally, the ALJ noted that Plaintiff's medications helped decrease her PTSD and bipolar depression disorder symptoms. Tr. 23 (citing Tr. 1072). And in contrast to her testimony that mental health symptoms included drowsiness, the ALJ pointed out that Plaintiff only reported the side effects of constipation and occasional fatigue. Tr. 23 (citing Tr. 711, 915, 931, 963). In fact, no provider remarked that she appeared sleepy or drowsy. Tr. 23 (citing Tr. 711, 915, 931, 963, 1073, 1135). Ultimately, these medical records amounted to substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony about the extent of his back-related limitations.

The ALJ cited further substantial evidence that Plaintiff's daily activities conflicted with her testimony about the extent of mental and physical health limitations. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities

"contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ reasonably found several of Plaintiff's reported daily activities conflicted with her allegations about physical and mental health symptoms. To discount a plaintiff's testimony, an ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ reasonably identified evidence that suggested Plaintiff could do more than she alleged at the hearing when deciding to partially discount her symptom testimony about pain, fatigue, and mental health symptoms. For example, although Plaintiff testified that she could not work due to severe pain, memory difficulties, anxiety, and fatigue, she also reported that she quit working to care for her 2 grandchildren. Tr. 21 (citing Tr. 275, 691). Indeed, in June 2018 she was "very busy caring for her 2 grandkids," and planned to take her grandchildren hiking and camping. Tr. 21, 23. While she testified about an inability to lift more than 15 pounds

11 – OPINION & ORDER

or walk more than two blocks, the ALJ pointed out that Plaintiff also reported moving

a wall oven, raising rescue animals, and working in her yard. Tr. 21 (citing Tr. 707,

865, 1064). Because the ALJ reasonably cited several activities that conflict with

Plaintiff's allegations about the limitations caused by her physical and mental health

symptoms, this was another clear and convincing reason for the ALJ to discount

plaintiff's testimony.[2]

## III.     Medical Opinion Evidence

Plaintiff also argues that it was error for the ALJ to find the medical opinion

of Mary L. Fey, NP unpersuasive. Pl. Br. at 9-12. Where, as here, the plaintiff's

application is filed on or after March 27, 2017, the ALJ is no longer tasked with

"weighing" medical opinions, but rather must determine which opinions are most

"persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no

longer any inherent extra weight given to the opinions of treating physicians ... the

ALJ considers the 'supportability' and 'consistency' of the opinions, followed by

additional sub-factors, in determining how persuasive the opinions are." *Kevin R. H.*

*v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate ...

how persuasive [they] find all of the medical opinions" and "explain how [they]

---

[2]     The ALJ also discounted Plaintiff's subjective symptom testimony because it
was inconsistent a conservative treatment history. Tr. 23-24. The Court need not
resolve whether the ALJ supported this basis with substantial evidence. Any error in
considering whether Plaintiff's treatment was "conservative" is harmless because the
ALJ identified two other sufficient bases to discount her symptom testimony. *See
Molina*, 674 F.3d at 1115 (holding ALJ's error "harmless where the ALJ provided one
or more invalid reasons for disbelieving a claimant's testimony, but also provided
valid reasons that were supported by the record").

considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

On August 18, 2021, Mary L. Fey, NP, provided a treating source statement that the ALJ rejected. In this statement, she wrote that she had treated Plaintiff since July 1, 2010, with visits every three months. Tr. 1088. Her diagnoses included chronic sciatica, osteoarthritis, myofascial pain syndrome, chronic pain, depression, bipolar disorder, PTSD, cervical spondylosis, and trigeminal neuralgia. *Id.* She identified Plaintiff's symptoms and clinical findings and confirmed that her conditions are corroborated by objective medical findings. Tr.1089. She wrote that Plaintiff has to rest multiple times daily because of pain. *Id.* She estimated that Plaintiff could sit for thirty minutes and stand and walk for thirty minutes at one time and four hours in an eight-hour day. Tr. 1090. She affirmed that Plaintiff needs to shift positions at will from sitting to standing or walking. *Id.* She wrote that Plaintiff would require a ten-to-fifteen-minute break every thirty minutes. Tr. 1091. She limited Plaintiff's lifting to ten pounds. *Id.* She identified grasping, fingering, and reaching limitations. *Id.* Finally, she opined that Plaintiff would miss more than four days from a regular work schedule. Tr. 1092. The ALJ rejected Nurse Practitioner Fey's opinion because the limitations she imposed in her opinion were not supported by the objective medical evidence. Tr. 24.

The ALJ adequately discussed the strength of the evidence underlying NP Fey's opinion in the record and its inconsistency with other evidence when finding it unpersuasive. Tr. 30. The supportability and consistency factors require ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support her or her medical opinion," and its consistency with other sources. 20 C.F.R. § 404.1520c(c)(1-2). The ALJ first discounted the substance of NP Fey's opinion because it lacked significant support. Tr. 24. For example, NP Fey opined that Plaintiff would need to alternate sitting and standing, would need frequent breaks, and would miss work due to back and knee pain. Tr. 1092. As the ALJ noted, however, there was no objective imaging of Plaintiff's spine during the relevant period, and x-rays of her knee showed only limited osteoarthritis. Tr. 24 (citing Tr. 812). The ALJ further found that nothing in NP Fey's examinations themselves supported the limitations she imposed. Tr. 24. Regarding consistency, the ALJ noted that NP Fey's suggestion that Plaintiff would miss significant time per month and be physically limited conflicted with the record. For example, Plaintiff did not pursue physical therapy despite receiving a referral, and her activities with her grandchildren as a primary caretaker supported a greater ability to function than opined by NP Fey. Tr. 24. In sum, the ALJ sufficiently considered the supportability and consistency of NP Fey's medical opinion when concluding it was poorly supported by explanation and conflicted with other record evidence.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

DATED: _July 10_, 2025

_/s/Ann Aiken_____
ANN AIKEN
United States District Judge

15 – OPINION & ORDER